UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

YOLLIA CAMERON,

                              Plaintiff,

        -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, ANITA M. COLEY, in her
official capacity and individually, and ESTHER
WALKER WILSON, in her official capacity
and individually,

                              Defendants.
---------------------------------------------------------X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/21/19

15-CV-9900 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Plaintiff Yollia Cameron brings this Title VII and New York City Human Rights Law

("NYCHRL") action against the New York City Department of Education ("DOE"), Anita M.

Coley, and Esther Walker Wilson (collectively, "Defendants"). Plaintiff alleges that Defendants

discriminated against her for being pregnant by not giving her substitute teaching assignments

and by not hiring her for a secretary position. Defendants deny Plaintiff's allegations and have

now moved for summary judgment.

For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in

part. The Court GRANTS summary judgment in favor of Defendants with respect to the

following claims: (1) Plaintiff's claims in Counts I, III, and IV of the Complaint that she did not

receive a secretary position because she was pregnant are dismissed because Plaintiff has not

provided sufficient evidence to support those claims, (2) Counts II and V of the Complaint are

dismissed because Plaintiff did not timely submit a notice of claim and has now withdrawn those

claims, and (3) Counts VI and VII of the Complaint are dismissed because a normal pregnancy is

not a "disability" for purposes of a discrimination claim under NYCHRL The Court DENIES

summary judgment in favor of Plaintiff with respect to Plaintiff's claims in Counts I, III, and IV of the Complaint that Defendants discriminated against Plaintiff for being pregnant by not giving her substitute teaching assignments, because the evidence is sufficient to permit a reasonable jury to find that Defendants unlawfully discriminated against Plaintiff in this manner.

Trial will thus go forward on the issue of whether Defendants unlawfully discriminated against Plaintiff for being pregnant by not giving her substitute teaching assignments.

## I.    BACKGROUND

### A.    Factual Background[1]

In March 2008, Cameron obtained her substitute teacher's certificate from the DOE. (Defs.' Statement & Pl.'s Resp.,[2] ¶ 3.)   From September 2008 through December 2008, Cameron worked as a substitute teacher in various schools in Queens.   (*Id.*, ¶ 4.)   In January 2009, Cameron interviewed with Defendants Principal Coley and Assistant Principal Wilson for a substitute teaching position at the Eubie Blake School in Brooklyn ("P.S. 25").   (*Id.*, ¶¶ 7–8, 18.)   At the end of the interview, Coley informed Cameron that Cameron would be used as a substitute teacher at P.S. 25.   (*Id.*, ¶ 19.)   In February 2009, Cameron received her first substitute teaching assignment at P.S. 25.   (*Id.*, ¶¶ 20–34, 48, 62, 65.)   While at P.S. 25, Cameron and other substitute teachers there received substitute teaching assignments in one of three ways: (1) through a fully automated platform called SubCentral, (2) by Wilson directly asking a substitute teacher to fill in, and (3) by a full-time teacher asking a substitute teacher to fill in.   (*Id.*, ¶¶ 10 & 10A, 16.)

---

[1] Unless otherwise noted, all factual statements are undisputed.

[2] "Defs.' Statement & Pl.'s Resp." refers to "Defendants' Statement of Undisputed Material Facts and Plaintiff's Responses," which is pages 2 to 34 of "Plaintiff's Responses to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Counter Statement of Material Facts Demonstrating Genuine Issues to be Tried," ECF No. 51.

2

From February 2009 to June 2010, Cameron worked as a substitute teacher at P.S. 25 on 171 days. *(See id., ¶¶ 20–34.)* In June 2010, Cameron discovered that she was pregnant. (Ex. 9,[3] ¶ 6.) In July 2010, her pregnancy began to "show." *(Id.)* After summer break in July and August 2010, school started again in September 2010. *(See Ex. 2, at 36:18–25.)*

On September 16, 2010, Cameron emailed Coley and Wilson to inform them that she had renewed her substitute teaching license. (Ex. 18.) By October 26, 2010, however, Cameron still had not been contacted for any substitute teaching assignments at P.S. 25.[4] (Ex. 1, at 44:9–14.) On that day,[5] Cameron visited P.S. 25 in-person and went to Coley's office to speak directly with Coley. (Ex. 1, at 51:9–17, 54:7–15.) According to Cameron, Coley informed Cameron at that time that Coley had heard Cameron was pregnant, and had not contacted her for teaching assignments because the school did not want to be liable for any injury to Cameron. *(See Ex. 1, at 54:11–22.)* Coley added that Wilson, in particular, was concerned about Cameron working at P.S. 25 while pregnant. *(Id.)* Defendants dispute that Coley made these remarks. (Defs.' Memo,[6] at 14 n.3.[7])

---

[3] Numbered exhibits refer to exhibits attached to the Declaration of J. Patrick DeLince, dated June 2, 2017, ECF No. 52. Lettered exhibits refer to exhibits attached to the Declarations of Natalie S. Marcus, dated April 19, 2017, and July 5, 2017, ECF Nos. 47, 58.

[4] Defendants claim that Cameron was contacted on September 23, 2010, and October 1, 2010, by DOE for substitute teaching assignments at other schools. *(See Ex. M.)* It appears to be undisputed, however, that as of October 26, 2010, Cameron had not been contacted for any substitute teaching assignments at P.S. 25.

[5] Although Plaintiff's deposition testimony and the Complaint state that this visit was on September 26, 2010 (Compl., ¶ 34; Ex. 1, at 51:14–17), the parties' statements of undisputed facts state that this visit took place on October 26, 2010. (Defs.' Statement & Pl.'s Resp., ¶ 54.) For the purposes of this Opinion & Order, the Court will assume that the meeting took place on October 26, 2010. Whether the meeting occurred in September or October would not affect the Court's decision.

[6] "Defs.' Memo" refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, ECF No. 44.

[7] Coley and Wilson testified that they did not even know Cameron was pregnant until after Cameron filed a grievance with the EEOC. *(See Ex. 2, at 150:23-151:15; 153:23-154:12); Ex. 3, at 77:11-14).)* Defendants also claim that these remarks are inadmissible hearsay; that issue is addressed in section III.A.1.

3

The next day, October 27, Cameron received an email from Wilson asking Cameron to serve as a substitute teacher on October 28, 2010. (Defs.' Statement & Pl.'s Resp., ¶ 61.) On October 28 and 29, 2010, Cameron in fact served as a substitute teacher at P.S. 25. (Defs.' Statement & Pl.'s Resp., ¶¶ 62–63.)

According to Cameron, on October 29, 2010, Paulette Roberts—a first grade teacher at P.S. 25—asked Cameron to substitute for her on November 1, 2010. (Ex. 1, at 61:6–14.) Although Cameron accepted the assignment, Roberts called Cameron the next day and canceled. (*Id.*, at 64:4–20.) According to Cameron, Roberts explained during that call that Wilson had told Roberts, at Coley's instruction, not to use Cameron as a substitute because Cameron was pregnant.[8] (*Id.*)

On November 4, 2010, a different teacher at P.S. 25 asked Cameron to serve as a substitute teacher on November 5, 2010, which Cameron did. (*Id.* ¶¶ 64–65.) After November 5, 2010, however, Cameron was never again asked to serve, and never did serve, as a substitute teacher at P.S. 25. (*Id.*, ¶¶ 73, 73A; *see also* Ex. M (showing that after November 4, 2010, Cameron was contacted for substitute teaching assignments only at schools other than P.S. 25).)

## B. Relevant Procedural History

Cameron filed this action against Defendants on December 21, 2015, before the Honorable Alison J. Nathan. (Compl., ECF No. 1.) On March 3, 2016, Defendants filed their Answer. (ECF No. 15.) On April 19, 2017, after discovery, Defendants moved for summary judgment. (ECF No. 43.) On August 31, 2017, the case was reassigned to the undersigned.

---

[8] Roberts does not remember making these statements (Ex. 9, at 29:13–21, 31:9–36:5), and Coley and Wilson deny knowing that Cameron was pregnant at that they made these statements (Ex. E, at 154:3–6; Ex. F, at 81:4–82:6). The admissibility of these statements is addressed in section III.A.2.

4

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party shows there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."    Fed. R. Civ. P. 56(a).    In determining whether there is a "genuine" dispute as to material fact, "a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor."    *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir. 2003)). The burden of showing that "no [dispute as to any] material fact exists lies with the party seeking summary judgment."    *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

To demonstrate the existence of a genuine issue of material fact, "[t]he opposing party must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed. R. Civ. P. 56, setting forth specific facts showing there exists a genuine issue of material fact." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).    The nonmoving party successfully demonstrates a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."    *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)) (internal quotation marks omitted).

## III.    DISCUSSION

### A.    Evidentiary Rulings

Cameron's evidence of discrimination primarily consists of her own testimony about statements made to her by Defendant Coley and former P.S. 25 teacher Paulette Roberts on October 26, 2010, and October 29, 2010, respectively.    (*See* Pl.'s Opp'n, at 7–8.)    Other than Cameron's own testimony, there is no evidence that Coley or Roberts made these statements. Because Cameron would be the person testifying about these out-of-court statements, Defendants

argue they are inadmissible hearsay.   (Defs.' Reply, at 3.)   As discussed below, these statements are not hearsay when offered against Coley, DOE, or Wilson, except that Coley's October 26, 2010 statement is hearsay if offered against Wilson.

### 1.   Coley's Statements to Cameron

During her deposition, Cameron testified that Coley stated to Cameron that Coley had "heard of the news that [Cameron] was pregnant," that Coley "d[id] not want to be liable" if Cameron got hurt, and that "that was the reason for [Coley] not having called," and "cho[osing] not to use," Cameron as a substitute teacher.   (Ex. 1, at 54:7–15, 94:4–8.)   Coley further stated that the person "concerned" about Cameron's pregnancy was Wilson, and that Cameron should "contact Dr. Wilson."   (*Id.*, at 54:16–22.)   Although these are out-of-court statements, they are not hearsay if offered against Coley or DOE.

If offered against Coley, these statements are not hearsay because they are the statements of an opposing party (Coley) used against that opposing party.   *See* Fed. R. Evid. 801(d)(2)(A).

If offered against DOE, Coley's statements are not hearsay because they were made by DOE's "employee on a matter within the scope of that relationship . . . while it existed."   Fed. R. Evid. 801(d)(2)(D).   Under Rule 801(d)(2)(D), an employee's statement is not hearsay when used against an employer, where the record shows "(1) the existence of [an] agency relationship [between the declarant and the employer], (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency."   *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996) (citation and internal quotation marks omitted).

With respect to requirements (1) and (2), there is sufficient evidence in the record to show that, at the time Coley purportedly made these statements, Coley was an employee of DOE.   In particular, when these statements were purportedly made, Coley was the Principal of P.S. 25 and had a DOE email address.   (Defs.' Statement & Pls.' Resp., ¶ 7; Ex. 2, 19:10–20:5.)   The Court

also takes judicial notice of the fact that P.S. 25 is a public school run by the DOE. That fact is "generally known within the trial court's territorial jurisdiction" and is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b)(1).

With respect to requirement (3), there is evidence in the record sufficient to show that substitute teaching assignments were "within the scope of" Coley's employment with DOE. It is undisputed that Coley participated in interviewing and hiring Cameron for the position of substitute teacher. (Defs.' Statement & Pl.'s Resp., ¶¶ 18–19.) It is also undisputed that Coley hired at least one other long-term substitute teacher, Mr. Kitchens. (Pl.'s Statement,[9] ¶ 46.) A reasonable jury could also conclude from Cameron's testimony that Coley had oversight over substitute teaching assignments. For example, Cameron testified that Coley instructed Coley's secretary to identify Cameron as a priority substitute teacher. (Ex. 1, at 19:10–16.) Cameron also testified that Coley instructed Wilson not to give Cameron substitute teaching assignments. (Ex. 1, at 64:4–20.[10]) Collectively, this evidence is sufficient to establish that substitute teaching assignments were within the scope of Coley's employment. Coley's statements to Cameron that concerned Cameron's substitute teaching position and assignments, are thus admissible against Coley's employer, DOE.

Although Coley's statements are admissible if offered against Coley or DOE, they are *not* admissible if offered against Wilson. A statement by one employee is admissible against another employee under Rule 801(d)(2)(D) only if the declarant was "directly responsible" to the employee against whom the statement is being used. *Rioux*, 97 F.3d at 660 (quoting *Zaken v.*

---

[9] "Pl 's Statement" refers to "Plaintiff's Local Rule 56.1 Statement of Material Facts Demonstrating Genuine Issues to be Tried," which is pages 34 to 48 of "Plaintiff's Responses to Defendants' Local Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Counter Statement of Material Facts Demonstrating Genuine Issues to be Tried," ECF No. 51. Defendants did not respond to Plaintiff's Local Rule 56.1 Statement.

[10] As discussed below, this testimony is admissible. *See infra*, § III.A.2.

*Boerer*, 964 F.2d 1319, 1322–23 (2d Cir. 1992), *cert. denied*, 506 U.S. 975, (1992)) (internal quotation marks omitted). Although Wilson was "directly responsible" to Coley (as discussed in greater detail below), there is no evidence that Coley was "directly responsible" to Wilson. Coley therefore was not Wilson's agent, and for this reason, Coley's statement to Cameron is not admissible against Wilson. *See id.*

Cameron argues that Coley's statements are admissible because they are not being used to prove the truth of the matter asserted, but instead to show Defendants' "motives." (Pl.'s Opp'n, at 13.) But, as against Wilson, Coley's statements are being offered for their truth. In particular, Cameron is attempting to introduce a statement by Coley that Wilson was "concerned" with Cameron being pregnant, for the purposes of proving that Wilson, in fact, was "concerned" about Cameron being pregnant. Cameron is, therefore, offering this statement for "truth of the matter asserted in the statement," Fed. R. Evid. 801(c), making it inadmissible hearsay if introduced against Wilson. *See United States v. Cummings*, 858 F.3d 763, 774 (2d Cir. 2017) (holding that, while first declarant's statement, "I am going to shoot Volcy in the face," was not hearsay, second declarant's statement, "I heard [first declarant] say 'I am going to shoot Volcy in the face,'" was inadmissible hearsay within hearsay when offered against first declarant).

Accordingly, under Rule 801(d)(2)(D), the statements purportedly made by Coley to Cameron on or about October 26, 2010, are not hearsay if introduced against DOE or Coley, but are hearsay if introduced against Wilson.

### 2. Roberts' Statements to Cameron

During her deposition, Cameron testified that Roberts told her that Roberts had to cancel Cameron's November 1, 2010 substitute teaching assignment because "Dr. Wilson relayed instructions to [Roberts] from Ms. Coley not to use [Cameron] because [Cameron] was pregnant." (Ex. 1, 64:15–66:2.) Although Roberts' statement appears to contain hearsay

8

within hearsay, hearsay within hearsay is admissible if each statement is subject to an exception or exclusion. *See* Fed. R. Evid. 805. As discussed below, Roberts' statement contains three different levels of potential hearsay, each of which is subject to a hearsay exclusion: (1) Coley's statement to Wilson commanding Wilson not to use Cameron, (2) Wilson's statement to Roberts instructing Roberts not to use Cameron and informing Roberts that this instruction came from Coley, and (3) Roberts' statement to Cameron informing Cameron of (1) and (2).

### a. Coley's Statement to Wilson

Coley's statement to Wilson "not to use [Cameron] because [Cameron] was pregnant" is a command. In general, commands are not hearsay unless they are used to prove the truth of an implicit assertion. *United States v. Dupree*, 706 F.3d 131, 136–37 (2d Cir. 2013) (holding that order was not hearsay because it consisted "primarily of imperative statements" and was a "verbal act"); 801 *Weinstein's Federal Evidence* § 801.11 (noting that questions, imperatives, and verbal acts are generally not considered statements). In the present case, Cameron is seeking to introduce Coley's command to Wilson to show that this command was given, not to prove the truth of the command. For this reason, Coley's command to Wilson is not hearsay.

### b. Wilson's Statement to Roberts

Wilson's statement to Roberts relaying "instructions from Ms. Coley not to use [Cameron] because [Cameron] was pregnant" is slightly different from Coley's command to Wilson. In this statement, Wilson not only instructed Roberts not to hire Cameron, but also informed Roberts that this instruction came from *Coley*. Cameron would offer this latter portion of Wilson's statement for the truth of the matter asserted. Nevertheless, Wilson's statement is still not hearsay if used against Wilson, DOE, or Coley.

If introduced against Wilson, this statement is not hearsay because it is Wilson's own statement and Wilson is the opposing party against whom it would be used. *See* Fed. R. Evid.

9

801(d)(2)(A).

If introduced against DOE, Wilson's statement is not hearsay because Wilson was an employee of DOE, and substitute teaching assignments fell under the scope of Wilson's employment at the time Wilson made the statement. As with Coley, Wilson's statement is admissible against DOE if the evidence shows "(1) the existence of [an] agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Rioux*, 97 F.3d at 660. With respect to (1) and (2), it is undisputed that Wilson was the Assistant Principal at the time she purportedly made this statement, and Wilson was thus an employee of DOE. (*See, e.g.*, Defs.' Statement & Pl.'s Resp., ¶ 8.) With respect to (3), it is undisputed that Wilson "had oversight over the substitute teachers" and that substitute teaching assignments fell under the scope of Wilson's authority. (*See Id.*, ¶ 15.) Accordingly, under Rule 801(d)(2)(D), Wilson's statement to Roberts is not hearsay when used against DOE.

If introduced against Coley, Wilson's statement is similarly not hearsay, because statements by an employee relating to a matter within the scope of her employment are admissible against supervisors who are "directly responsible" for that employee. *Rioux*, 97 F.3d at 660. It is undisputed that, at the time Wilson made this statement, Coley was the Principal of P.S. 25 and Wilson was an Assistant Principal there. (Defs.' Statement & Pl.'s Resp., ¶¶ 7–8.) It also appears to be undisputed that Coley delegated tasks to Wilson. (Pl.'s Statement, ¶ 45.[11]) And the Court takes judicial notice of the fact that, in this judicial district, a school assistant principal generally reports to a school principal. There is thus sufficient evidence in the record

---

[11] Although the deposition testimony cited in support of this fact contains an objectionable question, Defendants' counsel did not object to the question. (*See* Ex. 2, 60:17–24.) Defendants also did not respond to Plaintiff's Local Rule 56.1 Statement.

for a fact-finder to conclude that Wilson was "directly responsible" to Coley at the time she

purportedly made this statement and, as a consequence, the statement is admissible against

Coley. *See Zaken v. Boerer*, 964 F.2d 1319, 1322 (2d Cir. 1992) (holding that, because

company's vice president of sales was "directly responsible" to company's principal owner, his

statement was admissible against company's principal owner). Roberts' statement is therefore

admissible against Coley. *See id.* (holding that out-of-court statement by vice president that

principal owner fired plaintiff because she was pregnant was not hearsay when introduced against

principal owner).

### c. Roberts' Statement to Cameron

Finally, Roberts' statement to Cameron that "Dr. Wilson relayed instructions to [Roberts]

from Ms. Coley not to use [Cameron] because [Cameron] was pregnant" is not hearsay when

introduced against any of the Defendants. With respect to DOE, it is undisputed that at the time

Roberts purportedly made this statement, she was a teacher at P.S. 25 and thus an employee of

DOE. (*See* Pl.'s Statement, ¶ 27; Ex. 1, at 60:10–11.) Roberts was also acting within the

scope of her employment when she made this statement. As a teacher at P.S. 25, one of

Roberts' job duties was finding replacement substitute teachers for her classroom. (Defs.'

Statement & Pl.'s Resp., ¶¶ 10, 10A.) In fact, a day earlier, Roberts had assigned Cameron to a

substitute teaching job, on November 1, 2010. (Ex. 1, at 61:6–14.) There is thus sufficient

evidence for a fact-finder to conclude that assigning substitute teachers was within the scope of

Roberts' employment. Because the statement that Cameron is attempting to introduce relates to

substitute teaching assignments, it is not hearsay if offered against DOE.

With respect to whether Roberts' statement is admissible against Coley and Wilson, there

is sufficient evidence in the record for a fact-finder to conclude that Roberts was "directly

responsible" to both of those individuals. In particular, the record shows that both Coley and

11

Wilson evaluated Roberts and other full-time teachers. (Ex. 1, at 32:20–24; Ex. 7, at 45:20–46:25; Ex. 6, at 38:2–15.) The Court also takes judicial notice of the fact that school teachers are generally supervised by the school principal and assistant principals. For these reasons, and because Roberts was discussing a matter within the scope of her employment (as discussed above), Roberts' statement is admissible against Coley and Wilson.

*    *    *

Accordingly, because Coley's statement to Wilson, Wilson's statement to Roberts, and Roberts' statement to Cameron all fall under exclusions to the rule against hearsay, Roberts' statement to Cameron on or about October 29, 2010, is not hearsay and can be introduced against Defendants Coley, DOE, and Wilson.

## B. Cameron's Title VII Claim against DOE

### 1. Legal Standard

Under Title VII, it is unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of that individual's "sex." 42 U.S.C. § 2000e-2(a)(1). Employers are also prohibited from depriving an employee of "employment opportunities or otherwise adversely affect[ing] h[er] status as an employee" on the basis of "sex." *Id.* § 2000e-2(a)(2). Discrimination on the basis of "sex" under this section includes discrimination "because of or on the basis of pregnancy." 42 U.S.C. § 2000e(k); *see also Young v United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1343, (2015) ("The Pregnancy Discrimination Act makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy.").

"To state a claim for employment discrimination under Title VII, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color,

12

religion, sex, or national origin was a motivating factor in the employment decision." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 304 (2d Cir. 2017) (internal quotation marks and citation omitted). To prove one's "employer took adverse action" against her, a plaintiff must show there was "a materially adverse change in the terms and conditions of employment." *See id.* (quoting *Galabaya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Galabya*, 202 F.3d at 640).

To survive summary judgment, in particular, a Title VII plaintiff who does not have direct evidence of discrimination must satisfy the "three-part burden-shifting test" established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002)). *First*, the plaintiff must establish a "prima facie case of discrimination" by showing that "(1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing h[er] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on [her] membership in the protected class." *Id.* (citing *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). *Second*, if the plaintiff successfully establishes her prima facie case, "the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Id.* *Third*, if the defendant does proffer such a legitimate reason, the burden shifts back to the plaintiff to prove "that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." *Id.* (internal quotation marks and citation

omitted). At this stage, the plaintiff "must adduce enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004).

The *McDonnell* burden-shifting framework is inapplicable, however, where the plaintiff provides "direct evidence that an illegitimate factor played a motivating or substantial role" in an adverse employment action. *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1568 (2d Cir. 1989) ("In cases where a plaintiff *can* present direct evidence of discrimination . . . the burdens of proof outlined in *McDonnell Douglas* need not apply.") (emphasis in original); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 122 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). "Direct evidence" of discrimination can include "evidence of discriminatory comment[s]," including comments that are "uncorroborated." *Back*, 365 F.3d at 124. Where direct evidence exists, it is "for the jury to decide whether" the discrimination played a "motivating or substantial part" in the adverse employment action and whether the defendant "would have taken the same action" without the discrimination. *Grant*, 880 F.2d at 1569 (internal quotation marks omitted).

      2.    Application

      a.    Lost Wages from Substitute Teaching Assignments

With respect to Cameron's claim that DOE did not give her substitute teaching assignments because she was pregnant, Cameron has offered direct evidence of discrimination. In particular, Cameron testified during her deposition that Coley told Cameron that Cameron had not been called for substitute teaching jobs because Coley had "heard of the news that [Cameron] was pregnant" and did "not want to be liable." (Ex. 1, at 54:11–15.) Cameron also testified that a full-time teacher at P.S. 25, Paulette Roberts, canceled a teaching assignment with

14

Cameron because Wilson had relayed instructions from Coley not to hire Cameron because Cameron was pregnant. These statements are admissible against DOE, as discussed above, and are direct evidence of discrimination under Title VII. *See Back*, 365 F.3d at 124 (holding that "evidence of discriminatory comments," "even where uncorroborated," can constitute "direct evidence" of discrimination); *Manon v. 878 Educ., LLC*, No. 13–CV–3476 (RJS), 2015 WL 997725, at *3 (S.D.N.Y. Mar. 4, 2015) (holding that there was direct evidence of disability discrimination sufficient to survive summary judgment where, during the meeting terminating plaintiff's employment, direct supervisor noted that he "needed someone without children to work at the front desk"); *Owens v. New York City Hous. Auth.*, No. 84–CV–4932 (CSH), 1994 WL 97411, at *2 (S.D.N.Y. Mar. 18, 1994) (holding that statement by employer that employee's problems "had to do with her age and entering menopause" was sufficient direct evidence to "entitle her to trial" on her age discrimination claim).

Because Cameron has provided direct evidence of discrimination, *McDonnell* is inapplicable. The only question, therefore, is whether Cameron suffered an "adverse employment action" as a result of DOE's discrimination. A reasonable jury could infer from Cameron's testimony that DOE refused to give Cameron substitute teaching assignments as early as September 2010 because she was pregnant. A reasonable jury could also infer that DOE continued to refuse giving Cameron assignments in and after October 2010. Because DOE refused to give Cameron these assignments, Cameron did not receive wages she otherwise would have earned from them. The "decrease in wage" that Cameron incurred from not being given these assignments clearly constitutes an "adverse employment action." *See Terry*, 336 F.3d at 138; *Durick v. New York City Dep't of Educ.*, 202 F. Supp. 3d 277, 288 (E.D.N.Y. 2016) (holding that rescission of offer to teach summer school, resulting in lost wages, is adverse employment action). For this reason, Cameron has provided evidence from which a reasonable

jury could find that DOE (via Coley and Wilson) took an adverse employment action against Cameron because of her pregnancy.

In support of their Motion, Defendants argue that Coley's statement was just a "stray remark" that cannot, by itself, prove discrimination. A "stray remark" is a comment that bears no direct causal connection to the adverse employment action. *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015). Coley's remark, by contrast, directly informed Cameron that she was not giving Cameron substitute teaching jobs because Cameron was pregnant. (Ex. 1, at 54:7–15, 94:4–8.) Coley's instruction to Wilson not to use Cameron, similarly, is not a "stray remark," but instead a command that appears to have caused Wilson to discriminate against Cameron. (Ex. 1, at 64:15–66:2.) Wilson's conveyance of that instruction to Roberts, similarly, was not a "stray remark," but instead a direct order that resulted in Cameron losing out on wages from a substitute teaching job on November 1, 2010. (*See id.*)

Defendants also argue that because Cameron was not guaranteed substitute teaching assignments, she cannot bring a claim based on Defendants refusing to give those assignments to her. (Defs.' Memo, at 9.) Defendants' argument, however, is foreclosed by *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 236 (2d Cir. 2015). There, the Second Circuit held that discretionary decisions, such as whether to grant or deny bonuses, can qualify as adverse employment actions if they are made on a discriminatory basis. *Id.* Here, the fact that Defendants may have had the discretion to allocate substitute teaching assignments did not permit them to allocate those assignments in a discriminatory manner. *See id.* ("The fact that the employer has discretion whether to grant bonuses or raises does not support the conclusion that an employer may freely allocate them on the basis of . . . discrimination.").

### b. Secretary Position

In addition to claiming that DOE discriminated against her with respect to substitute

16

teaching assignments, Cameron claims that this discrimination resulted in her losing the opportunity to work as a secretary at P.S. 25. (Pl.'s Opp'n, at 10.) Cameron, however, has failed to show any causal link between DOE discriminating against her based on pregnancy and her losing the opportunity to work as a permanent school secretary. It is undisputed that in spring 2010, Coley told Cameron that *if* Cameron obtained a secretarial license, she would offer Cameron a secretarial position for the fall 2010 school year. (Defs.' Statement & Pl.'s Resp., ¶ 42.) On July 29, 2010, however, Cameron informed Defendant Coley by email that she still had not obtained a secretarial license. (*Id.*, ¶ 44.) In fact, Cameron never obtained the requisite license. (*Id.*, ¶ 45.) On August 9, 2010, the secretary position was filled by someone else. (*Id.*, ¶ 46.)

On this record, there is no direct evidence that the reason Cameron was not offered the secretary position was because she was pregnant. Although there is direct evidence that Defendants refused to call Cameron for *substitute teaching positions* due to her pregnancy, this evidence does not directly relate to the secretary position. Because Cameron has provided no direct evidence of discrimination with respect to the secretary position, the *McDonnell* burden-shifting framework applies. On summary judgment, then, Cameron has the burden of proving that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applications; (3) she was rejected for that position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010) (quoting *Petrosino v Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)), *abrogated on other grounds by Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108-09 (2d Cir. 2013). Cameron has not met this burden. With respect to requirement (2), there is no evidence in the record that Cameron ever formally applied for the secretary position and, regardless, Cameron

17

admits that she was unqualified because she never obtained a secretarial license. (Defs.'
Statement & Pl.'s Resp., ¶ 45.) With respect to requirement (3), there is no evidence that
Cameron was formally rejected from the position. And with respect to (4), the record shows
that the secretary position was filled in August 2010, shortly after Cameron informed Defendants
that she still had not obtained a secretarial license. For these reasons, Cameron cannot make out
a prima facie case of discrimination under *McDonnell* with respect to her claim that she did not
receive the secretary position because she was pregnant.

\*     \*     \*

Accordingly, Defendants' Motion is DENIED with respect to Plaintiff's claim in Count I
of the Complaint that DOE discriminated against Cameron by not giving her substitute teaching
assignments because she was pregnant; but Defendants' Motion is GRANTED with respect to
Plaintiff's claim in Count I of the Complaint that DOE discriminated against Cameron by
denying her a position as a school secretary because she was pregnant.

## C. Cameron's NYCHRL Claims

### 1. Cameron's NYCHRL Claims against DOE

Defendants have moved for summary judgment against Cameron with respect to her
NYCHRL claims against DOE—Counts II and V of the Complaint—on the grounds that
Cameron did not file a notice of claim and did not file the Complaint within the one-year statute
of limitations. (Defs.' Memo, at 4–6.) In response to Defendants' Motion, Cameron is
withdrawing these claims. (Pl.'s Opp'n, at 18.)

Accordingly, Defendants' motion for summary judgment is GRANTED with respect to
Counts II and V of the Complaint.

### 2. Cameron's NYCHRL Gender Discrimination Claims against Coley and Wilson

Defendants have moved for summary judgment against Cameron with respect to her NYCHRL gender discrimination claims against Coley and Wilson—Counts III and IV of the Complaint—on the grounds that (i) Cameron cannot establish a prima facie case of discrimination and (ii) Cameron's claims are barred by the statute of limitations. As with Cameron's Title VII claims against DOE, Defendants' Motion is DENIED with respect to Cameron's claims that Defendants Coley and Wilson discriminated against her by not giving her substitute teaching assignments, but is GRANTED with respect to Cameron's claims that Coley and Wilson discriminated against her by not giving her the secretarial position.

#### a. Prima Facie Case of Gender Discrimination

##### (i) Legal Standard

The NYCHRL prohibits "an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person" from "discriminat[ing] against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). "Pregnancy discrimination is a form of gender discrimination under the NYCHRL." *Chauca v. Abraham*, 841 F.3d 86, 90 n.2 (2d Cir. 2016), *as amended* (Nov. 8, 2016). Before 2005, courts in this district "construed the NYCHRL to be coextensive with its federal and state counterparts." *Mihalik*, 715 F.3d at 108. But, in 2005, the New York City Council passed the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), which clarified that NYCHRL claims should be construed more liberally than Title VII claims. *See* N.Y.C. Admin. Code § 8-130(a) ("The provisions of this title shall be construed liberally . . . regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed.").

19

In the wake of the Restoration Act, "interpretations of state and federal civil rights statutes can serve only as a *floor* below which the City's Human Rights law cannot fall." *Mihalik*, 715 F.3d at 109 (emphasis in original) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)).

To prevail on a NYCHRL claim, "the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik*, 715 F.3d at 110. On a motion for summary judgment on a NYCHRL claim, a moving defendant must show that "no jury could find that the [defendant] treated [the plaintiff] 'less well' than other employees at least in part because of her" gender. *See Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 13 (2d Cir. 2013). In addition to prohibiting discrimination by an "employer or an employee or agent thereof," N.Y.C. Admin. Code, § 8-107(1)(a), it is unlawful under the NYCHRL for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so," § 8-107(6). Under this aiding-and-abetting provision, a co-worker who "actually participates in the conduct giving rise to a discrimination claim" can be liable under NYCHRL even if "that co-worker lacked the authority to either hire or fire the plaintiff." *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (discussing substantively identical provision in New York State Executive Law) (internal quotation marks omitted).

### (ii)    *Application*

#### (a)    Lost Wages from Substitute Teaching Assignments

In Counts III and IV of the Complaint, Cameron alleges that Defendants Coley and Wilson discriminated against Cameron on the basis of gender by not giving Cameron substitute teaching assignments because she was pregnant. As discussed above, a reasonable jury could find Defendant DOE liable under Title VII, because its employees Coley and Wilson refused to

give Cameron substitute teaching assignments because she was pregnant. For these same

reasons, a reasonable jury could find Coley and Wilson themselves liable under the more liberal

standards of the NYCHRL. With respect to Coley, Cameron presented evidence that Coley

personally told her that Coley was not using Cameron for substitute teaching assignments

because Cameron was pregnant. (*See* Ex. 1, at 54:11–22.) Relying on that evidence, a

reasonable jury could conclude that Coley herself unlawfully discriminated against Cameron

under the NYCHRL by treating her "less well" than other substitute teachers. *See Simmons*,

508 F. App'x at 13. With respect to Wilson, Cameron can present evidence admissible against

Wilson that Wilson instructed Roberts not to hire Cameron for a teaching assignment on

November 1, 2010, because Cameron was pregnant. (Ex. 1, at 64:4–20.) Relying on that

evidence, a reasonable jury could conclude that Wilson discriminated against Cameron under the

NYCHRL or "actually participate[d]" in Coley's discrimination against Cameron. *See

Feingold*, 366 F.3d at 158. Thus, a reasonable jury could conclude that both Coley and Wilson

violated the NYCHLR by discriminating against Cameron on the basis of pregnancy.

### (b)     Lost Wages from Secretary Position

Cameron claims that Defendants Coley and Wilson should be held liable for

discriminating against her for being pregnant by not giving her the secretarial position. As

discussed above with respect to Cameron's Title VII claims against DOE, Cameron did not

submit evidence from which a reasonable jury could find that DOE discriminated against her

with respect to the secretarial position. Although Cameron's NYCHRL claims against Coley

and Wilson require a lesser showing than her Title VII claim against the DOE, the same

reasoning that forecloses her Title VII claims against DOE also forecloses these NYCHLR

claims against Coley and Wilson. In particular, with respect to the secretary position, there is

no evidence that Cameron was "treated less well" than others because of her pregnancy. *See*

21

*Simmons*, 508 F. App'x at 13.    The evidence instead shows that Cameron was not hired as a secretary because she was not qualified for that position, which was ultimately filled by a qualified applicant.    *(See* Defs.' Statement & Pl.'s Resp., ¶ 45.)

        b.    Defendants' Statute of Limitations Defense

Defendants argue that, regardless of whether Cameron has presented sufficient evidence of discrimination by Coley and Wilson, Cameron's claims are time-barred by a three-year statute of limitations.    (Defs.' Memo, at 5.)    Cameron contends that her NYCHRL claims against Coley and Wilson are not time-barred, because the statute of limitations was tolled while her claims were pending before the United States Equal Employment Opportunity Commission ("EEOC").    (Pl.'s Memo, at 19.)    Cameron is correct.

        *(i)*    *Legal Standard*

Under New York City law, a three-year statute of limitations applies to NYCHRL discriminatory practice claims.    N.Y.C. Admin. Code § 8-502(d).    This statute of limitations is tolled, however, "[u]pon the filing of a complaint with the city commission on human rights or the state division of human rights and during the pendency of such complaint."    *Id.*    Multiple courts have noted that there exists a work-sharing agreement between the EEOC and the New York State Division of Human Rights, under which discriminatory practice claims filed with the EEOC are automatically cross-filed with the New York State Division of Human Rights.    *See, e.g.*, *Nixon v. TWC Admin. LLC*, No. 16-CV-6456 (AJN), 2017 WL 4712420, at *3 (S.D.N.Y. Sept. 27, 2017) (Nathan, J.) ("[P]ursuant to a work-sharing agreement between the New York State Department of Human Rights ("SDHR") and the EEOC, charges filed with the EEOC are automatically considered dual-filed with the State—namely, with the SDHR."); *Martinez-Tolentino v. Buffalo State Coll.*, 277 A.D.2d 899, 899 (4th Dep't 2000) ("[C]harge filed with EEOC is deemed filed with State Division of Human Rights") (citing *Sunshine v. Long Island*

*Univ.*, 862 F. Supp. 26, 30 (E.D.N.Y. 1994)).

Relying on the existence of this work-sharing agreement, the majority of judges in this District who have considered this issue have held that the statute of limitations for NYCHRL claims is tolled when the plaintiff files a related complaint with the EEOC. *See Nixon*, 2017 WL 4712420, at \*4; *United States v. New York City Dep't of Educ.*, No. 16-CV-4291 (LAK) (JCF), 2017 WL 435940, at \*7 (S.D.N.Y. Jan. 31, 2017) (Francis, J.), *report and recommendation adopted*, No. 16-CV-4291 (LAK), 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017) (Kaplan, J.); *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (Abrams, J.); *Negron v. Bank of Am. Corp.*, No. 15-CV-8296 (DLC), 2016 WL 7238959, at \*1 (S.D.N.Y. Dec. 13, 2016) (Cote, J.); *Goodwine v. City of New York*, No. 15-CV-2868 (JMF), 2016 WL 3017398, at \*4 (S.D.N.Y. May 23, 2016) (Furman, J.); *Mohamed v. NYU*, No. 14-CV-8373 (GBD) (MHD), 2015 WL 3387218, at \*17 (S.D.N.Y. May 21, 2015) (Dolinger, J.), *report and recommendation adopted*, No. 14-CV-8373 (GBD) (MHD), 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015) (Daniels, J.), *reconsideration denied sub nom. Mohamed v. New York Univ*, No. 14-CV-8373 (GBD), 2015 WL 7076124 (S.D.N.Y. Nov. 12, 2015); *Allen v. New York City Dep't of Envtl. Prot.*, 51 F. Supp. 3d 504, 511 (S.D.N.Y. 2014) (Karas, J.); *Pagan v. Morrisania Neighborhood Family Health Ctr.*, No. 12-CV-9047 WHP, 2014 WL 464787, at \*2 (S.D.N.Y. Jan. 22, 2014) (Pauley, J.); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 831 (S.D.N.Y. 2013) (Preska, J.); *Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12-CV-925 (KPF), 2013 WL 6244158, at \*12 (S.D.N.Y. Dec. 2, 2013) (Failla, J.); *Hanley v. Chicago Title Ins. Co.*, No. 12-CV-4418 (ER), 2013 WL 3192174, at \*8 (S.D.N.Y. June 24, 2013) (Ramos, J.); *Regan v. Benchmark Co. LLC*, No. 11-CV-4511 CM, 2012 WL 692056, at \*15 (S.D.N.Y. Mar. 1, 2012) (McMahon, J.); *Wilson v. New York City Police Dep't*, No. 09-CV-2632 (PAC) (HBP), 2011 WL 1215735, at \*4 (S.D.N.Y. Mar. 25, 2011) (Crotty, J.); *Butler v. New York Health & Racquet Club*, 768 F. Supp.

2d 516, 536 (S.D.N.Y. 2011) (Maas, J.); *Esposito v. Deutsche Bank AG*, No. 07-CV-6722 (RJS), 2008 WL 5233590, at \*5 (S.D.N.Y. Dec. 16, 2008) (Sullivan, J.).[12]

### *(ii)   Application*

As discussed above, Cameron has provided evidence from which a reasonable jury could find that Coley and Wilson violated her rights under the NYCHRL as early as September 2010. On March 2, 2011, the EECO received Cameron's Charge of Discrimination.   (Ex. 29.)   The Charge of Discrimination form states, "I want this charge filed with both the EEOC and the State or local Agency, if any."   (*Id.*)   On March 10, 2011, the EEOC sent Cameron a letter informing her that it would be sending her Charge of Discrimination to the New York State Division of Human Rights.   (Ex. U.)   This letter confirms that the work-sharing agreement discussed in other cases was in place in March 2011, when Cameron filed her charge with the EEOC.   *See, e.g.*, *Nixon*, 2017 WL 4712420, at \*4.   Cameron's Charge of Discrimination was therefore cross-filed with the New York State Division of Human Rights in March 2011, tolling the statute of limitations on her NYCHRL claims from that point in time.   *See, e.g., id.*   Approximately three years later, on March 12, 2014, the EEOC provided Cameron with a right-to-sue letter. (Ex. A to Ex. A.)   Once that happened, the "pendency of the complaint" ended, along with tolling of the statute of limitations.   *See* N.Y.C. Admin. Code, § 8-502(d); *see also, e.g.*, *Negron*, 2016 WL 7238959, at \*1 (holding that tolling of statute of limitations ended when EEOC issued its right-to-sue letter).   On December 21, 2015, Cameron filed her Complaint in

---

[12] Many judges in the Eastern District of New York, as well, have reached the same conclusion.   *See, e g , Berlyavsky v New York City Dep't of Envtl. Prot.*, No. 14-CV-03217 (KAM) (RER), 2015 WL 5772266, at \*6 (E.D.N.Y. Aug. 28, 2015), *report and recommendation adopted as modified*, No. 14-CV-3217 (KAM) (RER), 2015 WL 5772255 (E.D.N.Y. Sept. 30, 2015), *reconsideration denied*, No. 14-CV-3217 (KAM) (RER), 2016 WL 1383486 (E.D.N Y. Apr. 7, 2016), *aff'd*, 671 F. App'x 836 (2d Cir. 2016); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 208 (E.D.N.Y. 2014); *Shah v MTA New York City Transit*, No. 12-CV-4276 (ERK) (RLM), 2013 WL 504387, at \*8 (E.D.N.Y. Feb. 8, 2013); *Sundaram v Brookhaven Nat Labs* , 424 F Supp. 2d 545, 565 (E.D.N.Y. 2006).

this case. (ECF No. 1.)

Between the first possible act of discrimination in September 2010 and the filing of Cameron's Complaint in December 2015, fewer than thirty months accrued:

- fewer than seven months accrued between September 2010 and March 2011;
- less than one month accrued between March 2, 2011 and March 12, 2014; and
- fewer than twenty-two months accrued between March 12, 2014 and December 21, 2015.

Because fewer than thirty-six months, or three years, had accrued by the time Cameron filed this action, Cameron's claims are not barred by the statute of limitations.

Defendants argue that tolling is not warranted here because other courts in this circuit have held that filing a complaint with the EEOC does not toll the statute of limitations. (Defs.' Memo, at 5 & Defs.' Reply, at 1 (citing *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir. 2014); *Yaohua Deng v. Aramark Educ. Grp., Inc.*, No. 04-5670-CV, 2006 WL 1049073, at *1 (2d Cir. Apr. 19, 2006) (summary order); *Cincotta v. Hempstead Union Free Sch. Dist.*, No. 15-CV-4821 (ADS) (AKT), 2016 WL 4536873, at *18 (E.D.N.Y. Aug. 30, 2016); *Ayazi v. New York City Dep't of Educ.*, No. 08-CV-2456 (MKB), 2012 WL 4503257, at *8 (E.D.N.Y. Sept. 28, 2012), *reconsideration denied*, No. 08-CV-2456 (MKB), 2013 WL 310394 (E.D.N.Y. Jan. 25, 2013), *aff'd*, 586 F. App'x 600 (2d Cir. 2014).))

The cases Defendants cite are inapposite. *Castagna* concerned whether filing a complaint with the EEOC tolls the statute of limitations on state law *tort* claims—not claims under the NYCHRL—and, in any event, the court there did not even decide the issue of whether, "pursuant to New York law, there may be some ground for tolling of state tort claims during the pendency of an EEOC charge." 744 F.3d at 258–59. In *Yaohua Deng*, the Second Circuit affirmed an order holding that plaintiff's Title VII claim was time-barred because the plaintiff

25

there did not timely file his complaint with the Suffolk County Human Rights Commission ("SCHRC"), which had informed plaintiff it was "closing his file" and that if he "wished to pursue his claims further, he must contact their office." *Yaohua Deng v. Aramark Educ. Grp., Inc.*, No. 00-CV-359 (DRH), Mem. of Decision and Order, ECF No. 88, at 8 (E.D.N.Y. Sept. 23, 2004). Instead of complying with the SCHRC's direction, plaintiff waited "nearly two years to file his EEOC complaint." 2006 WL 1049073, at *1. Here, by contrast, the claims at issue are NYCHRL claims, not Title VII claims, and there is no question that Cameron's complaint was pending from March 2011 to March 2014.

*Ayazi* and *Cincotta* are inapposite because the claims there were against a school district or its officers. *See Ayazi*, 2012 WL 4503257, at *8; *Cincotta*, 2016 WL 4536873, at *18. *Cincotta*, in particular, held that claims brought against school districts or officers under New York *State* Human Rights Law are not tolled by filing a complaint with the EEOC or the NYSDHR. 2016 WL 4536873, at *18. The *Cincotta* court relied on decisions reasoning that the one-year statute of limitations imposed by section 3813 of the New York Education Law ("NYEL") on claims against school districts and their officers is not tolled by EEOC filings. *Id.* at *17-18 (quoting, e.g., *Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03-CV-7951 (PGG), 2009 WL 3170302, at *11 (S.D.N.Y. Sept. 30, 2009)). Here, by contrast, NYEL § 3813 is inapplicable because Defendants Coley and Wilson are not "officer[s] of a school district." *See* NYEL § 2(13) (not identifying "principals" or "assistant principals" as officers); *Collins v. City of New York*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) (Caproni, J.) ("Superintendents qualify as officers . . . but principals do not."); *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 147 (N.D.N.Y. 2011) (holding that an assistant principal is not an "officer" under NYEL § 3813). In sum, the cases Defendants cite do not overcome the clear trend in this district that the statute of limitations on NYCHRL actions is tolled during the pendency of a complaint filed with

26

the EEOC.

*    *    *

Accordingly, Defendants' Motion for Summary Judgment is DENIED with respect to

Plaintiff's NYCHRL claims in Counts III and IV of the Complaint that Plaintiff was not given

substitute teaching assignments because she was pregnant, but is GRANTED with respect to

Plaintiff's claims that she did not receive the secretary position because she was pregnant.

### 3.    NYCHRL Disability Claims against Coley and Wilson

#### a.    Legal Standard

The NYCHRL prohibits "an employer or an employee or agent thereof, because of the

actual or perceived . . . disability . . . of any person . . . [from] discriminat[ing] against such

person in compensation or in terms, conditions or privileges of employment."    N.Y.C. Admin.

Code § 8-107(1)(a)(3).    Under the NYCHRL, disability is defined as any "physical, medical,

mental or psychological impairment, or a history or record of such impairment."    *Id.* § 8-

102(16)(a).    "[P]hysical, medical, mental, or psychological impairment" is, in turn, defined as:

> (1) an impairment of any system of the body; including, but not limited to:
> the neurological system; the musculoskeletal system; the special sense organs
> and respiratory organs, including, but not limited to, speech organs; the
> cardiovascular system; the reproductive system; the digestive and genito-
> urinary systems; the hemic and lymphatic systems; the immunological
> systems; the skin; and the endocrine system; or
>
> (2) a mental or psychological impairment.

*Id.* § 8-102(16)(b).

No court has held that a normal pregnancy qualifies as an "impairment" under NYCHRL

§ 8-102(16)(B) or that discrimination against a woman on the basis of normal pregnancy is a

form of "disability" discrimination under the NYCHRL.    Instead, courts deciding pregnancy

discrimination claims have held that "[p]regnancy discrimination is a form of gender

27

discrimination." *Chauca v. Abraham*, 841 F.3d 86, 90 (2d Cir. 2016), *as amended* (Nov. 8, 2016), *certified question accepted*, 28 N.Y.3d 1108 (2016), *certified question answered*, 30 N.Y.3d 325 (2017). The only court that has directly considered whether discrimination on the basis of a normal pregnancy could be "disability" discrimination under the NYCHRL decided in the negative. *See Krause v. Lancer & Loader Grp., LLC*, 40 Misc. 3d 385, 396 (N.Y. Sup. Ct. 2013) ("[E]ven under NYCHRL's liberalized and expansive definition of disability, plaintiff has failed to allege any 'impairment' that she suffered as a result of her pregnancy, which caused any behavior for which she was allegedly terminated.") (citations omitted).

### b. Application

In addition to bringing claims for "gender discrimination" under NYCHRL, Cameron alleges that the pregnancy discrimination she faced was "disability discrimination" because Coley and Wilson perceived her as disabled. (*See* Pl.'s Opp'n, at 24–25.) There is no evidence, however, that Coley and Wilson understood Cameron to be suffering from a pregnancy-related complication or non-pregnancy-related disability. The evidence instead suggests that Coley or Wilson discriminated against Cameron merely for being pregnant. (*See* Ex. 1, at 54:11–22.) As discussed above, there is no question that discrimination on the basis of normal pregnancy is prohibited by Administrative Code section 107(1)(a)'s prohibition against "gender" discrimination. The question, then, is whether discrimination on the basis of normal pregnancy is also prohibited by Administrative Code section 107(1)(a)'s prohibition on "disability" discrimination. For several reasons, this Court agrees with the New York Supreme Court's decision in *Krause*, which held that discrimination on the basis of a normal pregnancy is *not* "disability" discrimination under NYCHRL. *See* 965 N.Y.S.2d at 322.

*First*, under the plain language of the Administrative Code, the mere fact of being pregnant cannot be a "disability" because pregnancy is not an "impairment of any system of the

body." To the contrary, pregnancy is a normal function of a healthy reproductive system. *See Krause*, 965 N.Y.S.2d at 322 ("[P]laintiff has failed to allege any disability within the meaning of NYSHRL, *i.e.*, that her pregnancy *impaired* her in exercising a normal bodily function, or that she had any complications in connection with her pregnancy, which prevented her from normal life activity.") (emphasis in original) (citations omitted); *cf. Lehmuller v. Inc. Vill. of Sag Harbor*, 944 F. Supp. 1087, 1093 (E.D.N.Y. 1996) ("A normal pregnancy . . . is merely the natural consequence of reproduction."), *on reconsideration on other grounds*, 982 F. Supp. 132 (E.D.N.Y. 1997); *see also Bond v. Sterling, Inc.*, 997 F. Supp. 306, 311 (N.D.N.Y. 1998) ("It is simply preposterous to contend a woman's body is functioning abnormally because she is lactating.").

*Second*, because the Administrative Code's prohibition of "gender" discrimination undeniably prohibits discrimination on the basis of normal pregnancy, it would be duplicative for discrimination on the basis of "disability" to also cover discrimination on the basis of normal pregnancy. Thus, for the same reasons that courts have held that normal pregnancy is not a disability under the Americans with Disabilities Act, this Court holds that discrimination on the basis of pregnancy is not "disability" discrimination under Administrative Code section 8-107(1)(a). *See, e.g., Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 627 (S.D.N.Y. 1996) ("Title VII and the PDA specifically covered employment discrimination on the basis of pregnancy, thereby obviating the need to extend the coverage of the ADA to protect pregnancy and related medical conditions."); *Lehmuller*, 944 F. Supp. at 1093 ("Courts have generally held that pregnancy and related medical conditions are not disabilities under the ADA.").

*Third*, the structure of the Administrative Code suggests that the term "disability" does not include normal pregnancy. In particular, whereas section 8-107(15) of the Administrative Code requires employers to make reasonable accommodations for disabled individuals, section 8-

29

107(22) of the Code requires employers to make reasonable accommodations for pregnant individuals. The fact that separate and distinct sections require employers to make reasonable accommodations for "disability" (on the one hand) and "pregnancy" (on the other hand) suggests that pregnancy is not a "disability." Indeed, when the New York City Council added section 8-107(22) to the Administrative Code, section 8-107(15) was already in effect. The Council nevertheless added section 8-107(22) because it was concerned about reports of discrimination against pregnant women, including those with normal pregnancies. *See* Administrative Code § 8-102, Note 3 (Provisions of L.L. 78/2013). The Council therefore appears to have understood that section 8-107(15) did not require reasonable accommodations for pregnant women, and thus understood that normal pregnancy is not a "disability."

For these reasons, Defendants' Motion for Summary Judgment with respect to Counts VI and VII of the Complaint is GRANTED.

## IV. CONCLUSION

For the reasons above, the Court partially GRANTS summary judgment in favor of Defendants with respect to the following claims: (1) Plaintiff's claims in Counts I, III, and IV of the Complaint that she did not receive a secretary position because she was pregnant are dismissed because Plaintiff has not provided sufficient evidence to support those claims, (2) Counts II and V of the Complaint are dismissed because Plaintiff did not timely submit a notice of claim and has now withdrawn those claims, and (3) Counts VI and VII of the Complaint are dismissed because a normal pregnancy is not a "disability" for purposes of a discrimination claim under NYCHRL. The Court DENIES summary judgment in favor of Defendants with respect to Plaintiff's claims in Counts I, III, and IV of the Complaint that Defendants discriminated against Plaintiff for being pregnant by not giving her substitute teaching assignments, because a reasonable jury could find that Defendants unlawfully discriminated

30

against Plaintiff in this manner.

The Clerk of Court is directed to terminate the motion at ECF No. 43.

The parties shall, by March 8, 2018, submit to the Court a joint letter outlining the steps that need to be taken before the case is Ready for Trial. The parties must file a joint pretrial order by March 15, 2018. By that date, the parties shall also advise the Court whether they consent to trial of this case before a Magistrate Judge. Motions *in limine* shall be due on April 6, 2018. Oppositions to motions *in limine* shall be due on April 20, 2018. Replies in further support of motions *in limine* shall be due on April 27, 2018. A pretrial conference date shall be set for May 1, 2018, at 3:30 p.m. Trial is tentatively scheduled for May 7, at 9:30 a.m.

Counsel are directed to comply with this Court's Individual Rules.

SO ORDERED.

Dated: New York, NY
February 20, 2018

KIMBA M. WOOD
United States District Judge